# UNITED STATES BANKRUPTCY COURT
# FOR THE
# WESTERN DISTRICT OF KENTUCKY

| | | |
|---|---|---|
| IN RE: | ) | |
| | ) | |
| ROBIN O'NEIL | ) | CASE NO. 20-32460(1)(7) |
| | ) | |
| Debtor(s) | ) | |
| | ) | |
| SHELLI DRY | ) | A.P. NO. 20-03030 |
| | ) | |
| Plaintiff(s) | ) | |
| | ) | |
| v. | ) | |
| | ) | |
| ROBIN O'NEIL | ) | |
| | ) | |
| Defendant(s) | ) | |

## MEMORANDUM-OPINION

This matter is before the Court on the Motion for Summary Judgment filed by Defendant/Debtor Robin O'Neil ("Debtor" or "O'Neil") and the Cross Motion for Summary Judgment of Plaintiff Shelli Dry ("Dry"). The Court considered the Debtor's Motion for Summary Judgment, Dry's Combined Response in Opposition to Debtor's Motion for Summary Judgment and Motion for Summary Judgment, the Debtor's Combined Reply to Dry's Response and Response in Opposition to Dry's Motion for Summary Judgment, and Dry's Reply to Debtor's Response in Opposition to Dry's Motion for Summary Judgment. For the following reasons, the Court will **GRANT, IN PART, AND DENY, IN PART**, the Debtor's Motion for Summary Judgment and **GRANT, IN PART, AND DENY, IN PART**, Dry's Motion for Summary Judgment. An Order incorporating the findings herein accompanies this Memorandum-Opinion.

## PROCEDURAL AND FACTUAL BACKGROUND

On September 12, 2005, Debtor and Dry formed Unlimited Learning, PLLC ("UL"). UL provided speech therapy and occupational therapy to children. Dry is a licensed occupational therapist and O'Neil was a licensed speech-language pathologist.

At the inception of UL, Debtor and Dry split the expenses of the company evenly between them, including the mortgage, utilities, and general accounting costs. Dry and O'Neil paid themselves according to the income each member generated from their therapy services.

In 2011, the IRS performed an audit of UL for the year 2009. Dry and Debtor met with the IRS on September 1, 2011 and explained that each member of UL did their own billing, that they used one bank account at PNC Bank, that both members had check signing authority and that each member kept the income they generated based on the therapy they provided. In other words, Dry kept all profits derived from occupational therapy services after expenses and O'Neil kept all profits derived from speech therapy services after expenses.

The audit showed that the 2209 Form 1065 for UL, listed a total amount of payments to the two members of $170,747. The Schedule K-1s for the members of UL showed the profits and losses were split evenly between Dry and O'Neil. However, Dry claimed $112,389 on Line 4 of her 2009 Schedule K-1 and O'Neil claimed $58,358 on Line 4 of her Schedule K-1. The IRS determined that UL's tax preparer had incorrectly characterized the members' payments as "guaranteed payments," instead of actual distributions. Therefore, the IRS determined the profits had to be split evenly between O'Neil and Dry. This added approximately $27,000 to O'Neil's income for 2009. O'Neil

therefore, owed an increased amount of $18,650, plus interest of $1,234.49, for a total of $19,889.49 to the IRS for the year 2009.

While each member had actually received the income listed on the K-1 in 2009, the IRS audit also disallowed a number of deductions listed by O'Neil that the IRS determined were personal expenses rather than business deductions. These improper deductions were included in the increased amount owed to the IRS by O'Neil. No appeal was pursued by O'Neil of the 2009 IRS audit findings.

The parties decided they needed to draft a new Operating Agreement to accurately reflect how the parties were to be paid by keeping the income each party generated. In December 2011, O'Neil expressed to Dry through text messages that she felt entitled to take half of the business profits of UL from 2006 to the present. The parties met several times to discuss possible solutions to O'Neil's increased tax liability, including an offer by Dry to lower O'Neil's monthly expenses for 2012, as well as offering to pay the Debtor the tax due resulting from the amount of added income. Dry made several other proposals, but O'Neil would not accept anything other than Dry paying the entire tax bill, which Dry refused to do since O'Neil would not consider all of the improper deductions she had taken which also increased the overall tax bill.

On February 17, 2012, instead of trying to resolve the tax issue, O'Neil began to confiscate checks belonging to Dry, which had been issued for therapy services provided by Dry. The checks were not deposited into the business bank account and Dry had no access to them. O'Neil continued to assert that she was entitled to 50% of the profits of UL dating back to January 2007.

On February 19, 2012, O'Neil cut a security cable and removed UL's business laptop containing UL's business records, including checking account information from the business

-3-

premises.  O'Neil refused to allow Dry to inspect a copy of the records.  O'Neil also removed all remaining funds, $2,496.34, from UL's PNC bank account, as well as removing all business checks from the premises.  This resulted in overdrafts, returned check fees and forced Dry to use her own money to pay UL's bills.

O'Neil claims these actions were a result of Dry removing $13,954.49 from the business bank account.  These funds however were owed to Dry for her therapy services.  Due to all of these actions, Dry resigned her membership from UL on February 21, 2012.  Her resignation was to be effective April 17, 2012.

On February 22, 2012, O'Neil redirected UL's mail to an unknown post office box to which Dry had no access.  O'Neil insisted that Dry's resignation was effective immediately and she no longer considered her a member of UL.

On February 27, 2012, O'Neil removed Dry's name as a signatory to UL's business account at PNC without Dry's knowledge or approval.  This meant Dry had no access to the business bank account or access to the income paid for her services.  This amounted to $21,479.13 worth of payments for Dry's therapy services wrongfully taken by O'Neil.

Subsequent to Dry's resignation from UL, Dry failed to make payments on the business property and failed to maintain the building.  As a result, the building suffered water damage.  O'Neil filed an insurance claim and received $8,000 in insurance funds to replace the roof, which she transferred to her own personal bank account.  O'Neil used those funds for her own personal expenses.

In March 2012, Dry filed suit against O'Neil in Jefferson Circuit Court seeking a dissolution of UL and later amended the Complaint asserting claims for conversion, breach of fiduciary duty,

unjust enrichment, misappropriation of Dry's name and identity, fraud and breach of contract, among other claims. At trial, O'Neil produced a copy of an Operating Agreement that she attempted to have the Court enforce. Dry contended she had never signed such a document and that the document was a fraudulent document.

Relevant to the claims asserted in the state court action and this nondischargeability proceeding are the following jury instructions presented at trial:

INSTRUCTION NO. 9
Misappropriation and Conversion – Robin O'Neil

A. You will find for Shelli Dry on her claim of misappropriation and conversion if you find from the evidence any of the following or a combination thereof, that Robin O'Neil and/or Unlimited Learning, LLC:

1. Filed insurance claims under the identity of Shelli Dry in order to collect money after she had terminated her employment with Unlimited Learning, LLC, and/or

2. Took funds that belonged to Shelli Dry for occupational therapy services provided and did not provide the funds to Shelli Dry; and

B. Robin O'Neil's and Unlimited Learning, PLLC's actions caused damages to Shelli Dry.

INSTRUCTION NO. 10
Breach of Fiduciary Duty – Robin O'Neil

A. A member of a Limited Liability Company owes a fiduciary duty to the members and the Limited Liability Company. It was the duty of Robin O'Neil as a member of Unlimited Learning, PLLC, to exercise the utmost good faith in the best interests of the LLC and its member, Shelli Dry.

B. You will find for Shelli Dry on her claim of breach of fiduciary duty if you find that Robin O'Neil:

    1.      Violated her duties to Shelli Dry; and

    2.      The violations occurred prior [to] Robin O'Neil's acceptance of Shelli Dry's resignation from Unlimited Learning, PLLC; and

    3.      Robin O'Neil's breach of fiduciary duty caused financial harm to Shelli Dry.

<u>INSTRUCTION NO. 5</u>

Do you, the Jury, find that Robin O'Neil and ShellI Dry entered into one of the Operating Agreements introduced into evidence during this trial that contained terms and conditions governing their involvement as the sole members of Unlimited Learning, PLLC?

Following a jury trial on Dry's claims in the state court action and on the counterclaim of O'Neil, Judgment was entered on August 21, 2012. The jury found in favor of Dry on all claims and awarded Dry $25,000 against O'Neil on her claims of misappropriation and conversion. The jury also found in favor of Dry on her claim of breach of fiduciary duty by O'Neil and awarded her $50. The jury also made a finding that Dry had not entered into the Operating Agreement with O'Neil that O'Neil sought to enforce.

On October 6, 2020, O'Neil filed her Voluntary Petition seeking relief under Chapter 7 of the United States Bankruptcy Code.

On December 23, 2020, Dry filed this Adversary Proceeding seeking a judgment declaring the debt owed to her based upon the state court Judgment, nondischargeable pursuant to 11 U.S.C. § 523(a)(4) and (a)(6).

On August 25, 2021, O'Neil filed a Motion for Summary Judgment seeking dismissal of the Adversary Proceeding and granting Debtor a discharge of her debt owed to Dry.

On September 16, 2021, Dry filed a Response to Debtor's Motion for Summary Judgment and a Cross Motion for Summary Judgment in her favor on both claims of her Complaint.

For the following reasons, the Court will grant, in part, and deny, in part, the Motion for Summary Judgment of the Debtor and grant, in part, and deny, in part, the Motion for Summary Judgment of Dry.

## LEGAL ANALYSIS

I. INTRODUCTION.

Both parties seek entry of summary judgment in their favor based upon the Judgment entered in the state court action. The movant has the initial burden of showing "the absence of a genuine issue of material fact." *Celotex Corp. v. Catrett*, 477 U.S. 317, 322 (1986). A "genuine issue" is one where no reasonable fact finder could return a judgment in favor of the non-moving party. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986). If the record taken as a whole could not convince a rational trier of fact to return a verdict in favor of the non-moving party, the motion should be granted.

Both parties herein contend that the doctrines of res judicata, collateral estoppel and judicial estoppel prevent re-litigation of the issues that were thoroughly litigated in the state court action. The purpose of collateral estoppel, like res judicata, is to protect the litigants from re-litigating identical issues with the same party and promoting judicial economy by preventing needless litigation. *Parklane Hosiery Co., Inc. v. Shore*, 439 U.S. 322, 326 (1979). The party asserting issue preclusion or collateral estoppel bears the burden of proof as to all elements and must present a sufficient record to reveal the controlling facts and exact issues litigated. *Kelly v. Okoye (In re*

*Kelly)*, 182 B.R. 255, 258 (B.A.P. 9th Cir. 1995). The doctrine of collateral estoppel applies in nondischargeability litigation, such as the one before this Court. *Grogan v. Garner*, 498 U.S. 279, 284-85 (1991).

This Court is required by the full faith and credit clause of the United States Constitution to apply the forum's state law of collateral estoppel. *In re Hanif*, 530 B.R. 655, 664 (Bankr. E.D. Mich. 2015). The Court must give the state court Judgment the same preclusive effect that any Kentucky State Court would give the Judgment. Under Kentucky law, collateral estoppel applies when there is: (1) identity of issues; (2) a final decision or judgment on the merits; (3) a necessary issue with the estopped party given a full and fair opportunity to litigate; and (4) a prior losing litigant. *Jellinick v. Capital Indem. Corp.*, 210 S.W.3d 168, 172-73 (Ky. App. 2006).

All of these elements are present in this case. The issues are the same as those in the state court action which resulted in, a finding of conversion. There also was a final judgment on the merits after a jury trial. The Debtor had a full and fair opportunity to litigate her case and lost after a seven year period of litigation.[1] Debtor chose to file this Chapter 7 proceeding in hopes of discharging the debt instead of appealing the state court jury's verdict.

Dry's claims of conversion and misappropriation were fully litigated in the state court action. A final Judgment in Dry's favor was entered based upon the evidence presented. Based upon the doctrine of res judicata and collateral estoppel, the parties are estopped from re-litigating these issues. The Court will, therefore, consider the Motion and Cross Motion for Summary Judgment regarding the preclusive effect of the state court verdict in this adversary proceeding.

---

[1] During the lengthy course of the state court litigation, Debtor was represented by several different attorneys. Debtor ultimately obtained a law degree during this period and represented herself and UL at trial in state court.

II. <u>The Evidence Does Not Support a Claim for Nondischargeability Under 11 U.S.C. § 523(a)(4).</u>

Dry initiated this adversary proceeding by filing her Complaint to determine dischargeability of debt seeking judgment in her favor declaring the debt owed to her from O'Neil resulting from the state court Judgment nondischargeable pursuant to 11 U.S.C. §§ 523(a)(4) and (a)(6).

11 U.S.C. § 523(a)(4), provides in pertinent part:

A discharge under Section 727, 1141, 1228(a), 1228(b), or 1328(b) of this title does not discharge an individual debtor from any debt–

. . . . .

(4) for fraud or defalcation while acting in a fiduciary capacity, embezzlement or larceny.

The Sixth Circuit has defined "defalcation" to encompass embezzlement and misappropriation by a fiduciary, as well as the "failure to properly account for such funds." *Capital Indemnity Corp. v. Interstate Agency, Inc. (In re Interstate Agency)*, 760 F.2d 121, 125 (6th Cir. 1985). Controlling Sixth Circuit authority limits the scope of this provision to situations involving "trustees who misappropriate funds held in trust . . ." *In re Blaszak*, 397 F.3d 386, 391 (6th Cir. 2005). Claims based on a failure to meet an obligation under a common law fiduciary relationship will not give rise to a nondischargeability judgment under § 523(a)(4). *Id.* The defalcation provision applies to only those situations involving "an express or technical trust relationship arising from the placement of a specific *res* in the hands of the debtor." *Bd of Trs. of the Ohio Carpenters' Pension Fund v. Bocci (In re Bocci)*, 493 F.3d 635, 640 (6th Cir. 2007), quoting *R.E. America, Inc. v. Garver (In re Garver)*, 116 F.3d 176 (6th Cir. 1997). An agent-principal relationship, alone, is insufficient to establish a fiduciary duty under 11 U.S.C. § 523(a)(4). *In re Blaszak*, 397 F.3d at 391.

Most important to this case and Dry's §523(a)(4) claim, is that "it is well established that the defalcation provision of § 523(a)(4) applies to express or technical trusts, but not to constructive trusts that courts may impose as an equitable remedy. *In re Blaszak*, 397 F.3d at 391. Four requirements are necessary to establish an express or technical trust: (1) an intent to create a trust; (2) a trustee; (3) a trust res; and (4) a definite beneficiary. *In re Grim*, 293 B.R. 156, 166 (Bankr. N.D. Ohio 2003). These elements are clearly lacking in this case. Thus, Dry's claims under 11 U.S.C. § 523(a)(4), fail as a matter of law. Accordingly, Dry's Motion for Summary Judgment on 11 U.S.C. § 523(a)(4) is **DENIED** and O'Neil's Motion for Summary Judgment on 11 U.S.C. § 523(a)(4) is **GRANTED**.

    III. <u>Dry is Entitled to Summary Judgment on Her Claim under 11 U.S.C. 523(a)(6)</u>.

In Count II of her Complaint against Debtor, Dry asserts that due to the jury's findings in her favor that Debtor converted and misappropriated funds belonging to her, the sums awarded to her by the jury are considered nondischargeable under 11 U.S.C. § 523(a)(6). Specifically, under Jury Instruction No. 9 and the jury's finding that Debtor misrepresented and converted funds belonging to Dry, Dry contends the debt is nondischargeable under § 523(a)(6).

Under 11 U.S.C. § 523(a)(6),

> A discharge under Section 727, 1141, 1192, 1228(a), 1228(b) or 1328(b) of this title does not discharge an individual from any debt . . .
>
> . . . . .
>
> (6) for willful and malicious injury by the debtor to another or to the property of another entity . . .

-10-

Dry contends that based on Instruction No. 9 to the jury regarding O'Neil's misappropriation and conversion of her funds by filing insurance claims under Dry's name in order to collect money after Dry terminated her employment with UL, and/or by taking funds that belonged to Dry for occupational therapy services that Dry provided, Dry was damaged. Under Instruction No. 9, the jury "unanimously found in favor of Plaintiff of Shelli Dry on her claims of misappropriation and conversion" and "awarded Shelli Dry $25,000."

Section 523(a)(6) provides that a debt resulting from an injury must be both willful and malicious. *Markowitz v. Campbell (In re Markowitz)*, 190 F.3d 455, 463 (6th Cir. 1999). Under Section 523(a)(6), Dry had to prove the following elements: (1) the Debtor's conduct was willful and malicious, (2) the creditor suffered an invasion of its legal rights or to the legal rights of its property and (3) the invasion was caused by the Debtor's conduct. *Steier v. Best (In re Best)*, 109 F. App'x. 1, 4-6 (6th Cir. 2004). The creditor bears the burden of demonstrating a claim under 11 U.S.C. § 523(a)(6) by a preponderance of the evidence. *Id.*

A finding of conversion alone is not sufficient to satisfy the requirements of Section 523(a)(6). There must be proof that the party intended to cause the harm or it was substantially certain that such harm would occur. *Markowitz*, 190 F.3d *at 464; In re Lombardi*, 263 B.R. 848, 853 (Bankr. S.D. Ohio 2001).

In Kentucky, the tort of conversion is defined as the wrongful exercise of dominion and control over the property of another. *Post Road Partners, LLC v. Walters (In re Walters)*, 559 B.R. 156 (Bankr. E.D. Ky. 2006). Conversion is an intentional tort. *Ky. Ass'n of CTYS Comp. All Lines Fund Tr. v. McClendon*, 157 S.W.3d 626, 632 (Ky. 2005).

The record of the state court proceedings sufficiently established that Debtor wrongfully converted funds paid for Dry's occupational services, exercised dominion and control over those funds, and prevented Dry from obtaining what was her own property. That evidence consisted of testimony that on February 17, 2012 and February 19, 2012, O'Neil took checks paid for Dry's occupational therapy services and that these checks belonged to Dry, as the parties paid themselves according to the therapy services they each performed. On February 22, 2012, unbeknownst to Dry, O'Neil diverted all mail for UL, including incoming checks from insurance companies to a post office box that Dry had no knowledge of or could access. These were checks paid for Dry's occupational therapy services. Therefore, these actions of O'Neil converted property of Dry.

On February 27, 2012, O'Neil removed Dry as a signatory to the PNC business bank account without Dry's knowledge or authorization. She unilaterally removed Dry's ability to withdraw funds from the account or to access checks that were used to pay for Dry's services. Dry deposited checks paid for her occupational therapy services into the UL business account without knowing that she could no longer withdraw those funds from the account. In preventing Dry from accessing funds paid for her occupational therapy services and keeping those funds, O'Neil prevented Dry from accessing income and distributions which she was entitled to pursuant to the parties agreement and practices to pay themselves based on the income each generated.

The jury instructions and the findings by the jury establish a finding of willful and malicious injury under 11 U.S.C. § 523(a)(6). The word "willful" in § 523(a)(6) modifies the word "injury" indicating that nondischargeability takes a deliberate or intentional injury, not merely a deliberate or intentional act that leads to injury. *Kawaahaw v. Geiger*, 423 U.S. 57, 61-62 (1998). Courts in this jurisdiction have repeatedly held that debts arising from acts constituting conversion satisfy the

"willful and malicious" injury criteria of 11 U.S.C. § 523(a)(6).  *See Ryan v. Morris*, 579 B.R. 422 (Bankr. W.D. Ky. 2017); *Steier v. Best (In re Best)*, 109 Fed, App'x. 1, 5 (6th Cir. 2004) .

Here, the Judgment in Jefferson Circuit Court establishes that the damages awarded to Dry of $25,000 were based on misappropriation and conversion which satisfy the elements of a nondischargeable debt under 11 U.S.C. § 523(a)(6).  Accordingly, Dry is entitled to summary judgment in her favor on her claim that the debt owed to her from O'Neil based on the Judgment entered in the state court's action is nondischargeable under 11 U.S.C. § 523(a)(6).

Finally, O'Neil claims that the final Judgment "did not state whether the business or Ms. O'Neil owed Ms. Dry.  The Judgment was in the form of a 25,000 dollar amount awarded to Dry due to a failure to pay Dry by 'Unlimited Learning and/or O'Neil.'  It is impossible to determine whether Unlimited Learning, O'Neil, or both owe the Judgment."  Par. 9, p. 3 of Debtor's Motion for Summary Judgment. The Judgment is clear that the $25,000 award to Dry was against "O'Neil and/or Unlimited Learning, LLC."  The Judgment states the following:

> A Jury Trial was held in this case December 3 - December 9, 2019.  The Jury unanimously found in favor of th Plaintiff, Shelli Dry, on all claims and awarded as follows:
>
> **INSTRUCTION NO. 9 - Misappropriation and Conversion by Defendants Robin O'Neil and/or Unlimited Learning, PLLC**
>
> Misappropriation and Conversion under Instruction No. 9 and awarded Shelli Dry the following damages:
>
>                                                               **$25,000.00**

Under Instruction No. 9, the jury awarded Dry $25,000 against "Defendants Robin O'Neil and/or Unlimited Learning, PLLC." This language indicates that Robin O'Neil and/or Unlimited Learning, PLLC are responsible for the amount owed to Dry.

A finding of joint and several liability means that any one of the referenced defendants is responsible for the full amount of the award. Where the state court determined the issue of liability and determined that the debtor, in his or her individual capacity, and another defendant are jointly and severally liable for the amount of the judgment, the creditor may sue one or more of the parties to such liability separately, or all of them together, at his or her option. *See*, *In re Sevastakis*, 591 B.R. 197 (Bankr. D. N.J. 2018). In this nondischargeability proceeding, Dry has chosen to enforce the Judgment against only O'Neil and O'Neil is responsible for the entire amount.

## CONCLUSION

For all of the above reasons, the Court will **GRANT, IN PART, AND DENY, IN PART**, the Motion for Summary Judgment of both parties. Summary judgment in favor of the Debtor on Dry's claim for nondischargeability pursuant to 11 U.S.C. § 523(a)(4), be and hereby is, **GRANTED**. **IT IS FURTHER ORDERED, ADJUDGED AND DECREED** that summary judgment in favor of Dry on her claim of nondischargeability under 11 U.S.C. § 523(a)(6), be and hereby is, **GRANTED**. An Order incorporating the findings herein accompanies this Memorandum-Opinion.

Joan A. Lloyd
United States Bankruptcy Judge
Dated: January 20, 2022

# UNITED STATES BANKRUPTCY COURT
# FOR THE
# WESTERN DISTRICT OF KENTUCKY

| | | |
|---|---|---|
| IN RE: | ) | |
| | ) | |
| ROBIN O'NEIL | ) | CASE NO. 20-32460(1)(7) |
| | ) | |
| Debtor(s) | ) | |
| | ) | |
| SHELLI DRY | ) | A.P. NO. 20-03030 |
| | ) | |
| Plaintiff(s) | ) | |
| | ) | |
| v. | ) | |
| | ) | |
| ROBIN O'NEIL | ) | |
| | ) | |
| Defendant(s) | ) | |

## ORDER

Pursuant to the Memorandum-Opinion entered this date and incorporated herein by reference,

**IT IS HEREBY ORDERED, ADJUDGED AND DECREED** as follows:

The Motion for Summary Judgment of Defendant/Debtor Robin O'Neil on the Complaint of Plaintiff Shelli Dry is **GRANTED IN PART, AND DENIED IN PART**. O'Neil's Motion for Summary Judgment as to Dry's claim of nondischargeability under 11 U.S.C. § 523(a)(4), be and hereby is, **GRANTED**. The state court Judgment in favor of Dry in the amount of $50 is discharged. All other claims asserted in O'Neil's Motion for Summary Judgment, be and hereby are, **DENIED**.

Joan A. Lloyd
United States Bankruptcy Judge
Dated: January 20, 2022

**IT IS FURTHER ORDERED, ADJUDGED AND DECREED** as follows:

The Motion for Summary Judgment of Plaintiff Shelli Dry on her Complaint against Defendant/Debtor Robin O'Neil is **GRANTED IN PART, AND DENIED IN PART**. Dry's Motion for Summary Judgment on her claim of nondischargeability under 11 U.S.C. § 523(a)(6), be and hereby is, **GRANTED**. The state court Judgment in favor of Dry in the amount of $25,000 plus costs of $2,425.67 is not discharged. All other claims asserted in Dry's Motion for Summary Judgment, be and hereby are, **DENIED**.

Joan A. Lloyd
United States Bankruptcy Judge
Dated:  January 20, 2022